**DUNN BROTHERS, INC., Dunn & Dunn, Inc., and Pic-Pac Food Stores-Southgate, Inc., d/b/a Pic-Pac Food Stores, Petitioners,**

v.

**The NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 15072.**

United States Court of Appeals
Sixth Circuit.

Aug. 2, 1963.

———◆———

Robert L. Taylor, Memphis, Tenn. (Lloyd C. Kirkland, Jr., Memphis, Tenn., on the brief), for petitioners.

James McC. Harkless, N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Attys. N. L. R. B., Washington, D. C., on the brief), for respondent.

Before O'SULLIVAN, Circuit Judge, McALLISTER, Senior Circuit Judge, and MILLER, District Judge.

McALLISTER, Senior Circuit Judge.

This case is before the Court on a petition for review of an Order of the National Labor Relations Board. The Board found that petitioners, hereinafter called the Company, had violated Section 8(a) (1) of the Act by interrogating its employees concerning their Union adherence and activity, and that it had violated Section 8(a) (3) and (1) of the Act by refusing to reinstate employees, Andrews and Cooper, who, after having engaged in an economic strike on September 16, 1961, made an unconditional application for reinstatement to their former positions on September 18, 1961.

Local 1529, Retail Clerks International Association, AFL–CIO, filed the complaint in this case on December 20, 1961. In the complaint, the Union alleged that the Company discharged its employees, Andrews and Cooper, on September 16, 1961, and that it refused to reemploy them because they joined or assisted the Union, or engaged in other Union activities, for the purpose of collective bargaining, or other mutual aid or protection.

The Company operates a large supermarket in Memphis where this controversy arose. There were at least six checking stands in the store, and a seventh to be used when necessary on account of the number of customers. The incidents in this case occurred on the busiest day of the week, Saturday, September 16, and the seventh checking stand was being used. The store was filled with people. There were lines at all checking stands where customers pay for their purchases and have them placed in sacks.

Mr. Dunn, one of the officers of the Company, said that September 16 was a very unusual and "hectic" day at the store. A Union agent who was not an employee was in the store trying to foment a walkout. During the day the Company discharged a young schoolboy.

He had been employed for less than three days, and his conduct was unsatisfactory because he "fooled around" and was not serious or paying proper attention to his work. When this boy was discharged, Mullins, an employee at one of the checking stands and a member of the Union, hollered out repeatedly in a loud voice before customers, that the Company couldn't discharge the boy merely because he was a Union member. Mullins left his checking stand and kept hollering in a loud voice about the matter, telling the customers the Company had discharged a man just because he was a Union member. When the manager told Mullins to get back to his stand and to quit using the loud language, he nevertheless persisted and was finally discharged. During the day, Mullins' mother was roaming around the store, although she was not an employee. There is no question but what the boy and Mullins were discharged for proper cause. The Union makes no claim on their behalf.

Finally, sometime after Mullins' discharge, Andrews told the manager that he was quitting, and the manager testified he asked Andrews: "Are you sure you know what you are doing?" Andrews then left the store. Sometime afterward Cooper also left the store. When Andrews and Cooper left, there were lines of customers waiting to be served at their checking stands.

On the hearing, the two employees, Andrews and Cooper, testified that John LaRue, manager of the Company's store, told them that they were fired and that that was the reason they left the store. LaRue emphatically denied that he had discharged Andrews or Cooper.

The Trial Examiner, in his intermediate report and recommended order, stated:

"I am unimpressed with the credibility of Andrews' and Cooper's versions of their terminal conversations with LaRue. * * * I am not disposed to and do not credit the testimony of Andrews and Cooper that LaRue, in effect, told them that

they were discharged for union activity and membership.

\* \* \* \* \* \*

"On the entire record, I am convinced and find, contrary to the denials of Andrews and Cooper, that they departed from Respondents' premises to engage in a strike and picketing."

As mentioned, the Union filed its complaint alleging that the Company had discharged the employees on September 16. The Company, in its answer, denied that it had discharged them. The Trial Examiner found that Andrews and Cooper had never been discharged when they left the store on September 16, in spite of their claims that they had been so discharged; and the evidence amply supports this finding.

The Trial Examiner, however, went on to find that although Andrews and Cooper had not been discharged, when they left the store on September 16 they had departed from the premises to engage in a strike and picketing, and that, since the strike and picketing were lawful union activities protected by the National Labor Relations Act, these employees were entitled to the reinstatement which they requested on September 18, since they had not then been replaced by other employees. But, contrary to the Trial Examiner's finding, both Andrews and Cooper repeatedly denied that they had left the store to engage in a strike and picketing.

Moreover, the Trial Examiner further found that Andrews and Cooper were discharged two days after they left their jobs to engage in a walkout, and that such discharges took place at the time they sought reinstatement as employees.

However, in its brief in this Court, counsel for the Board declared that "the gravamen of the Board's unfair labor practice determination is that Andrews and Cooper, as unreplaced economic strikers, were discriminated against by petitioners [Company] when, on September 18, they applied for, and were refused, their jobs. Thus, the discrimination in-

volved herein relates *not to a discharge,* but to a refusal to reinstate economic strikers." , (Emphasis supplied.) Thus the Board disagrees with the Trial Examiner, and holds there was no discharge on September 18, although this is not a matter of great consequence.

Andrews and Cooper both deny that they had engaged in any strike. Andrews testified:

"I didn't know of any strike with the company * * * our placards didn't have 'On Strike' or anything on them, just 'Pic-Pac Unfair to Employees.' I didn't exactly think that was a strike * * *. I was fired and I walked in the picket."

Andrews was asked:

"Q. When you began picketing on Saturday night, what was the reason for it?

"A. Because we had been fired unjustly, we felt."

But, as the Hearing Examiner found on the basis of substantial evidence, neither Andrews nor Cooper had been fired, although this finding was contrary to their repeated testimony. The only testimony on the part of Andrews and Cooper as to the reason why they walked out was Cooper's testimony that they were protesting their unjust discharge. If we accept the finding of the Trial Examiner, which we do, that Andrews and Cooper were not discharged on September 16, then the only reason they gave in their testimony for picketing—that they were unjustly discharged on September 16—does not stand up; for they were not discharged.

Andrews and Cooper repeatedly disclaimed that, on September 16, they were engaging in a union-sponsored strike and picketing. They were, in effect, the complaining parties in the case and they certainly knew, better than the Trial Examiner, why they were picketing—and they say they were not engaged in any such union-sponsored strike and picketing. Accordingly, the evidence, of these most interested parties in the case, does not support a finding that, contrary to

their own testimony, they were engaged in a union-sponsored strike and picketing when they left the store.

There is no doubt that there was labor unrest in the store that day. Yet when the Union representative came into the store in the evening and asked the employees to come out on strike, none of the employees, including the members of the Union, paid any attention to him. It even appears that the employee Mullins, the most vociferous Union member who created the greatest disturbance in the store, left the place most reluctantly, earlier in the day, after he was discharged. There is no testimony from any of the employees that any of them walked out to join a strike. Some of the employees testified that Andrews told them that he had quit, or walked out because he was tired. This was disputed by Andrews and discounted by the Trial Examiner, whose finding in this regard, is, necessarily, accepted by this Court.

The Trial Examiner places great store on the evidence that on September 16 Andrews and Cooper repeatedly said to other employees in the store: "Are you ready—are you ready?" and that this meant they were getting ready to walk out and strike, and shows that they left their jobs for a protected activity. This might be an inference from certain evidence in the case; but while Andrews in his sworn testimony stated that he did not deny using the expression, he explained what was, or could have been meant by him:

"You see, we had a plan, four of us employees had planned to go out and spend the night out that night, and you have heard the expression like that. It could have meant, 'Are you ready for tonight'?"

In this regard, Cooper testified:

"Q. Mr. Cooper, at any time during the day did you say to any of the sack boys, 'Are you ready?', or words to that effect?

"A. No, sir, not that I recall.

"Q. Did you say that to anybody?

"A. I couldn't say about that. Now, because we were planning on going out, there was about four of us going out together that night, and I couldn't say. I might have said, 'Are you ready for tonight?', or something like that."

In this regard, the Trial Examiner stated that the testimony of Andrews and Cooper that the question "Are you ready," had reference to an after-work excursion which they and several other employees had previously arranged, was implausible. But why would Andrews and Cooper testify falsely about this? It would be to their advantage to testify to the contrary.

In the absence of any stronger evidence than the implausibility as found by the Trial Examiner, we accept the clear and repeated statements of Andrews and Cooper on this aspect of the case.

Andrews and Cooper are the principal figures in this controversy. They are the only employees that the Union is trying to have reinstated and reimbursed for nearly two years of wages, because of the Company's refusal to reinstate them.

In sum, then, Andrews and Cooper say they were discharged on September 16; the Trial Examiner found that they were not discharged on September 16; and the evidence amply sustains this finding; they say they did not leave the store on September 16 to engage in a strike and picketing. The Trial Examiner found that they did; they deny it. In spite of speculation—and intellectual speculation—as to why they did leave the store, their own testimony is the strongest evidence on this point; and the Trial Examiner's finding, based on his analysis of circumstances, that they left the store to engage in a strike and picketing, is not supported by substantial evidence.

The purpose of the picketing, according to Andrews and Cooper, was not related to any Union activities; they say they engaged in it only because of their claim that they were unjustly discharged; and, according to the Trial Examiner's finding, in which we concur, there was no discharge.

It may be that the Trial Examiner has divined the true situation; but because of the emphatic and repeated testimony to the contrary on the part of Andrews and Cooper, the Board's chief witnesses, the Examiner's divination or conclusion cannot be said to be supported by substantial evidence. It is not necessary to ascertain why these young men quit their jobs suddenly with no explanation. Cooper testified that, after he told Manager LaRue that he had signed a Union card, LaRue had never treated him unfairly. When, on one occasion, LaRue had asked Cooper how many employees had attended a Union meeting the day before, and Cooper had told him fifteen or twenty, LaRue replied: "Not bad." It is difficult to regard this observation of LaRue's as unfriendly to Cooper. It seems rather a friendly remark, according to the manner in which men speak informally to each other about their daily doings. Andrews was, according to Manager LaRue, a satisfactory employee with whom he had a close and friendly relationship. Of course, both Andrews and Cooper were friends of Mullins who had been discharged on the afternoon of September 16; and that discharge had been accompanied by what Andrews and Cooper may have considered a rather humiliating circumstance of having two policemen on hand to advise Mullins to leave the premises. Manager LaRue had an unfavorable view of unions, generally, and had discussed them with both Cooper and Andrews, as had other supervisory employees. It may have been that when their friend and fellow union-member Mullins was discharged, Cooper and Andrews, in the language of the street, became fed up, and suddenly decided to quit. It was after Andrews left the store that he met Mullins in the nearby Katz Drugstore where employees often had their lunch or supper. A little later, the Union representative had "homemade" signs prepared with the words, "Unfair to Employees," and Cooper and Andrews carried them in front of the Company's store from about 8 to 8:40 P.M., leaving the place before the

store closed at 9 P.M., evidently getting tired of the idea, after half an hour. The whole day seemed to have been filled with anxiety or emotion on the part of some of the parties concerned. It is not unusual for hardworking men, in the midst of tense situations of strife, to lose their tempers, to use bad judgment, and to make wrong decisions on the impulse of the moment, which sometimes can be rectified, and sometimes cannot. But whether the employees in question did any of these things—that, too, is speculation.

We have considered all the evidence with regard to both the alleged violations of Sections 8(a) (1), and 8(a) (3) and (1) of the Act. It is our conclusion that the Order of the Board is not sustained by substantial evidence on the record as a whole.

The Petition for Enforcement of the Board's Order is, accordingly, denied.